UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
: 
TICOR TITLE INSURANCE CO., :
: CASE NO. 1:09-cv-775
Plaintiff, :
:
vs. : OPINION & ORDER
: [Resolving Docs. No. 60, 62, 66 ]
TITLE ASSURANCE & INDEMNITY :
CORP., LLC, *et al.*, :
:
Defendants. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this breach of contract and fraud case, Plaintiff Ticor Title Insurance Company moves the Court for summary judgment on the counterclaims of Defendants Anthony Viola and Randy Pittman. [Doc. 60.] Defendant Jacob Showalter moves this Court for summary judgment on Plaintiff Ticor's claim of fraud, Defendant Viola's cross-claim for fraud, and on Defendant Pittman's cross-claim for fraud. [Doc. 62.] Finally, Defendant Viola moves this Court for summary judgment on Plaintiff Ticor's claim of fraud, Defendant Pittman's cross-claim of fraud, and Defendant Showalter's cross claim for loss of income.[1/] [Doc. 66.]

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the

---

[1/]Defendants Showalter and Viola each style their motion as a "motion for summary judgement and, in the alternative, a motion to dismiss for failure to plead fraud with the particularity required under Rule 9(b)." As multiple courts have held, however, motions based on Rule 9(b)'s pleading requirements are disfavored at the summary judgment stage after the close of discovery. *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 n.4 (2d Cir. 2001); *Bonilla v. Trebol Motors Corp.*, 150 F.3d 77, 81 (1st Cir. 1998) (treating plaintiffs' opposition to motion for summary judgement and related discovery materials as providing sufficient notice of defendant's fraudulent acts); *Buccino v. Cont'l Assur. Co.*, 578 F. Supp. 1518, 1524 n.5 (S.D.N.Y. 1983). Accordingly, this Court considers the motions as ones for summary judgment.

Case No. 1:09-cv-775
Gwin, J.

summary judgment motions.

Regarding Plaintiff Ticor's motion for summary judgment, the Court **GRANTS** the motion as to Defendant Viola's counterclaim and **DENIES** the motion as to Defendant Pittman's counterclaim.

Regarding Defendant Showalter's motion for summary judgment, the Court **DENIES** the motion as to all claims.

Regarding Defendant Viola's motion for summary judgment, the Court **GRANTS** the motion as to Defendant Showalter's cross-claims and Defendant Pittman's cross-claims and **DENIES** the motion as to Plaintiff Ticor's claim.

**I. Background**

This breach of contract and fraud case arises out of the sale of Defendant Randy Pittman's home in Maple Heights, Ohio. Defendant Jacob Showalter served as the closing and escrow agent for the sale. Together, Defendant Showalter and Defendant Anthony Viola owned Defendant Title Assurance & Indemnity Corporation ("Title Assurance"), an issuing agent for Plaintiff Ticor Title Insurance Company ("Ticor").

Shortly after the Pittman sale, Ticor revoked Title Assurance's issuing agency contract. Moreover, when approximately $100,000 from the sale was not applied to Pittman's mortgage and went missing, Defendant Pittman filed an insurance claim with Ticor. Plaintiff Ticor ultimately denied that claim and filed suit in this Court against Title Assurance, Showalter, Viola, and Pittman.

**A. Issuing Agency Contract**

On November 17, 2006, Ticor entered into an issuing agency contract with Defendant Title Assurance and its owners Defendants Showalter and Viola. [Doc. 60-3 at 35.] Pursuant to this

Case No. 1:09-cv-775
Gwin, J.

contract, Title Assurance could issue "title insurance commitments, policies, endorsements, and other title assurances . . .." [Doc. 60-3 at 35.] In addition to signing as representatives of Title Assurance, Showalter and Viola signed personal guarantees of the contract. [Doc. 60-3 at 42.]

On August 5, 2008, Plaintiff Ticor completed an audit of Defendant Title Assurance's operations, giving Title Assurance a "fail" rating. [Doc. 60-3 at 43.] The next day, the auditor sent a report to Defendant Showalter indicating eight separate deficiencies in Title Assurance's records and practices, including delinquent escrow account reconciliations, inadequate account information, failure to maintain a trust account, poor bank reconciliation processes, and improper handling of voided checks. [Doc. 60-3 at 44-47.] Plaintiff Ticor sent a similar report to its state agency manager Steve Garrett, indicating that Defendant Title Assurance had failed the audit. [Doc. 60-3 at 48-50.]

As a result, on August 7, 2008, Plaintiff Ticor notified Defendant Title Assurance that it was terminating the Issuing agency contract, effective September 30, 2008. [Doc. 60-3 at 51.] Moreover, the termination notice prohibited Title Assurance from conducting any other transactions on Ticor paper after September 10, 2008. [*Id.*]

Nevertheless, Defendant Title Assurance continued to issue closing protection letters and title insurance from Ticor. In response, on December 18, 2008, Ticor sent a cease-and-desist letter to Title Assurance, Showalter, and Viola. [Doc. 70-1 at 72.] Approximately two weeks later, Ticor vice president Tim Kalep met with Defendants Showalter and Viola at Title Assurance's offices to discuss the letter. [Doc. 70-1 at 49-50.] At this meeting, Defendant Showalter admitted that he had cut-and-pasted closing protection letters on Ticor paper after the September 10, 2008, prohibition date. [Doc. 70-1 at 31.]

Case No. 1:09-cv-775
Gwin, J.

### B. The Pittman Sale

In July 2008, while Title Assurance still had authority to issue policies on behalf of Plaintiff Ticor, Defendant Randy Pittman entered into a contract to sell his Maple Heights, Ohio, home to Anita Cauley. Defendant Title Assurance served as the settlement agent for the sale. [Doc. 60-3 at 53, 72-2 at 28-29.] In addition, Pittman signed an untitled document indicating he wanted Closing Protection Coverage from Defendant Title Assurance.[2/] [Doc. 60-3 at 58.]

Defendant Pittman had a first mortgage on the property in the amount of $101,093. [Doc. 60-3 at 53.] Originally, Option One held the mortgage, but Showalter says that the records of the Cuyahoga County Recorder's Office indicated it had been assigned to Investech Mortgage Securities. [Doc. 72-2 at 68.] Although Pittman believes the agreed sale price was originally around $110,000, [Doc. 72-3 at 50], the HUD-1 Settlement Statement Pittman signed lists the purchase price as $81,500.[3/] [Doc. 60-3 at 53.] Further, the HUD-1 indicates that Pittman owed approximately $115,600 total in mortgage payoffs, taxes, and closing costs, and that he agreed to pay the $34,136.13 difference at settlement. [*Id.*] According to Pittman, however, he believed that purchaser Cauley or someone from her mortgage company Wells Fargo was covering the $34,000 deficiency.[4/] [Doc. 72-2 at 19.]

On July 12, 2008, a day or so after Defendant Pittman signed the closing documents, an unknown party brought Title Assurance a cashier's check drawn on Charter One and payable to Title

---

[2/]There is no record that Title Assurance ever issued a closing protection letter to Pittman.

[3/]Through the sale process, Defendant Showalter evidently prepared multiple HUD-1 documents with different payment amounts and different signatures. [Doc. 72-2 at 87.]

[4/]When asked why he signed the HUD-1 indicating he, not Cauley, would pay the $34,000, Pittman said, "I made a mistake." [Doc. 60-3 at 33.]

-4-

Case No. 1:09-cv-775
Gwin, J.

Assurance in the amount of $34,136.13. [Doc. 60-3 at 56, 72-2 at 45-47.] Although Pittman's name is handwritten on the memo portion, he says he had no knowledge of the check. [Doc. 60-3 at 56.] Title Assurance deposited these funds into an escrow account prior to disbursing all funds from the sale to the lenders. [Doc. 72-2 at 45.]

Rather than disbursing the payoff amount, including the $34,136.13, to Option One or Investech Mortgage, however, Defendant Showalter wired the funds to Riviera Funding LLC at an account with First Merit Bank. [Doc. 72-2 at 74.] Defendant Showalter says he wired the funds to Riviera Funding per the instructions of a John Kelly at Investech. [Doc. 72-2 at 48.] Showalter says he had briefly spoken with Kelly on the phone, and Kelly subsequently sent these payment instructions to Showalter from a yahoo email account. [Doc. 72-2 at 49.]

Ultimately, the funds never reached the rightful lienholder, and Option One continued to seek satisfaction of the mortgage from Defendant Pittman. [Doc. 72-2 at 20, 37, 79.] In September 2008, Defendant Pittman filed a complaint with the Ohio Attorney General regarding Title Assurance's practices. [Doc. 1 at 7-8, 18 at 1-2.] In December, Defendant Pittman also filed an insurance claim with Plaintiff Ticor, but Ticor denied that claim. [Doc. 1 at 7-8, 18 at 1-2.] In February 2009, Plaintiff Ticor learned of the Ohio Department of Insurance's investigation into the Pittman sale and Title Assurance. [Doc. 1 at 8.]

On April 3, 2009, Plaintiff Ticor filed a nine-count Complaint in this Court against Title Assurance, Showalter, Viola, and Pittman. Relevant to the instant motions, Plaintiff Ticor alleged fraud and fraudulent misrepresentation against Defendants Showalter and Viola. [Doc. 1 at 10-11.]

Answering, Defendant Pittman filed a counterclaim against Ticor for breach of contract and cross-claims against Defendants Showalter and Viola for breach of fiduciary duty and fraud. [Doc.

Case No. 1:09-cv-775
Gwin, J.

18.] Similarly, Defendant Showalter filed a cross-claim against Defendant Viola alleging breach of fiduciary duty and conversion. [Doc. 21.] Finally, Defendant Viola filed a counterclaim against Ticor for breach of fiduciary duty and a cross-claim against Defendant Showalter for breach of fiduciary duty and fraud. [Doc. 26.]

Plaintiff Ticor, Defendant Showalter, and Defendant Viola have each moved for summary judgment on one or more of the claims against them. These motions are now ripe for ruling.

## II. Legal Standard

Summary judgment is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "A fact is material if its resolution will affect the outcome of the lawsuit." *Martingale, LLC v. City of Louisville*, 361 F.3d 297, 301 (6th Cir. 2004) (citing *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986))).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323 (quoting FED. R. CIV. P. 56(c)). However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.*

Case No. 1:09-cv-775
Gwin, J.

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See id.* at 586. Nor can the nonmoving party rely upon the mere allegations or denials of its pleadings. FED. R. CIV. P. 56(e).

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *Thomas v. Cohen,* 453 F.3d 657, 660 (6th Cir. 2004) (citations omitted). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)). Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Martingale,* 361 F.3d at 301 (citing *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.,* 96 F.3d 174, 178 (6th Cir. 1996)) (internal quotations omitted).

### III. Analysis

The parties in this case have filed three separate motions for summary judgment as to some of the various counterclaims and cross-claims among them. The Court addresses each party's motion in turn.

**A. Ticor's Motion for Summary Judgment**

Plaintiff Ticor moves this Court for summary judgment on the counterclaims of Defendants

Case No. 1:09-cv-775
Gwin, J.

Viola and Pittman.  [Doc. 60.]

*1. Viola's Claim for Breach of Fiduciary Duty*

In his counterclaim against Plaintiff Ticor, Defendant Viola says that Ticor owed him a fiduciary duty and breached this duty by failing to personally notify him of any improprieties taking place at Title Assurance.  [Doc. 26 at 5.]  In its motion for summary judgment, Ticor argues that no fiduciary duty existed between Ticor and Defendant Viola and that even if one did, no facts support Viola's claim that it breached this duty.  [Doc. 60-1 at 7-10.]  Defendant Viola has not responded to Ticor's motion.

Under agency law, an agent owes a fiduciary duty to the principal. *Orvets v. Nat'l City Bank, Ne.*, 722 N.E.2d 114, 119 (Ohio Ct. App. 1999).  Although courts generally recognize this duty as an obligation of the agent, one Ohio court has noted that, "[N]o good reason [exists] why facts may not develop which would establish the same confidential relationship between, and enjoin the same obligation upon, the principal toward his agent." *Bonnell v. B. & T. Metals, Co.*, 81 N.E.2d 730, 731-32 (Ohio Ct. App. 1948).  Nevertheless, "The duties of an agent to his principal are dependent upon the agreement between them." *Id.*; *see also Gem Sav. Ass'n v. Sterling Gold Props., Ltd.*, No. 12719, 1992 WL 245999, at *3 (Ohio Ct. App. Oct. 2, 1992).

In this case, any duties Plaintiff Ticor owed to Defendant Viola were articulated in the agreement between them: the issuing agency contract.  [Doc. 60-3 at 35-42.]  Specifically, Ticor agreed to (1) furnish Title Assurance with necessary forms, (2) provide guidelines and instructions for transacting business, (3) resolve Title Assurance's risk assumptions questions, and (4) arrange for any required reinsurance.  [*Id.* at 35.]  Defendant Viola has offered no facts that would support an inference that Ticor owed him any duty beyond these terms.

Case No. 1:09-cv-775
Gwin, J.

Moreover, even if such a duty did exist, Plaintiff Ticor notified Viola of the failed audit and other issues when it learned of them and provided this notice according to the contract. [Doc. 60-3 at 51.] Defendant Viola points to no evidence that Plaintiff Ticor knew of Defendant Showalter's conduct or any alleged improprieties and subsequently failed to share that information with Viola.

Accordingly, this Court **GRANTS** Plaintiff Ticor's motion for summary judgment as to Defendant Viola's counterclaim and **DISMISSES** the claim with prejudice.

*2. Defendant Pittman's Claim for Breach of Contract*

In his counterclaim against Ticor, Defendant Pittman says that Ticor refused to "pay off the mortgage [Pittman] owes to Option One Mortgage Corporation under its title insurance policy and/or closing protection coverage, . . .." [Doc. 18 at 8.] In its motion for summary judgment on this breach of contract claim, Plaintiff Ticor says that no title insurance policy was ever issued for the Pittman sale and that even if one had been, Pittman would not have been a beneficiary. [Doc. 60-1 at 10.] Additionally, Ticor says that it may rescind any coverage because of Defendant Pittman's alleged fraud. [*Id.*]

The primary evidence of Plaintiff Ticor's obligation to Defendant Pittman in this case is the one-page letter signed by Pittman evidencing that he has accepted some form of coverage from Title Assurance. [Doc. 60-3 at 58.] Additionally, the HUD-1 form submitted by Ticor lists a $235.75 charge for "Title Insurance" payable to Ticor by Defendant Pittman. [Doc. 60-3 at 54.] This is the same HUD-1 form, however, that Defendant Pittman says he did not sign [Doc. 76 at 5], and that he relies on in support of claim that Showalter and Viola defrauded him. [Doc. 77 at 6-7.]

Although Ticor initially argues that no valid policy exists in this case, it does not set forth any authority to support its argument or to address the legal significance of the acceptance letter

-9-

Case No. 1:09-cv-775
Gwin, J.

Pittman signed. Moreover, viewing the factual evidence and making all inferences in favor of Pittman, the non-moving party, this Court finds that a reasonable juror could conclude that Ticor was obligated to provide Pittman with coverage, even if it never issued a formal letter.[5]

Therefore, this Court turns to the issue more thoroughly briefed by the parties: whether Pittman's alleged fraud would permit Ticor to cancel the contract. To cancel a contract based on fraudulent misrepresentation, the plaintiff must show:

> (i) a representation or, where there is a duty to disclose, concealment of a fact, (ii) which is material to the transaction at hand, (iii) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (iv) with the intent of misleading another into relying upon it, (v) justifiable reliance upon the representation or concealment, and (vi) a resulting injury proximately caused by the reliance.

*Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 505 (6th Cir. 2003); *see also Gaines v. Preterm-Cleveland, Inc.*, 514 N.E.2d 709, 712 (Ohio 1987). Moreover, "whether fraud exists is generally a question of fact." *Carpenter v. Scherer-Mountain Ins. Agency*, 733 N.E.2d 1196, 1204 (Ohio Ct. App. 1999).

In this case, Plaintiff Ticor's argument that Pittman defrauded it is not well taken. Essentially, Ticor bases its fraud defense on the fact that Pittman "falsely represented that he was contributing $34,136.13 in cash to the closing," and that he "falsified the contract sales price." [Doc. 60-1 at 11.] According to the evidence before this Court, however, neither of these representations

---

[5] Specifically, Ticor does not dispute that Title Assurance had authority to issue closing protection on its behalf until the September 10, 2008, termination date. Moreover, the acceptance letter signed by Pittman on July 12, 2008, could be construed as an order for insurance. Under Ohio Revised Code § 3953.32, once a title insurance company receives such an order, it "shall offer closing or settlement protection . . . to any applicant for title insurance." In addition, the HUD-1 Statement, prepared by Ticor's agent, indicates that Pittman was charged $235.75 to Ticor Title for title insurance. [Doc. 60-3 at 54.]

Case No. 1:09-cv-775
Gwin, J.

proved to be false. Instead, the sale closed for the represented price of $81,500.[6] To the extent Pittman falsely stated that he would pay the $34,000 difference he owed on the mortgage, Ticor cannot show any harm from this statement because Title Assurance received that payment.[7]

Accordingly, this Court **DENIES** Plaintiff Ticor's motion for summary judgment as to Defendant Pittman's breach of contract claim.

### B. Showalter's Motion for Summary Judgment

Defendant Jacob Showalter moves this Court for summary judgment on Plaintiff Ticor's claims of fraud and fraudulent misrepresentation, Defendant Viola's cross-claim for fraud, and Defendant Pittman's cross-claim for fraud. [Doc. 62.]

*1. Ticor's Fraud Claims*

In its Complaint, Plaintiff Ticor alleges that Showalter fraudulently continued to issue closing protection letters and other title commitments after Ticor had terminated the issuing agency contract. [Doc. 1 at 10-11.] In addition, Ticor says that after this termination, Showalter fraudulently misrepresented to third parties that Ticor was underwriting Title Assurance's insurance documents. [Doc. 1 at 12.] In his motion for summary judgment, Defendant Showalter says that "there is no evidence to support any fraudulent conduct on the part of Mr. Showalter." [Doc. 62-1 at 1.]

As evidence that Showalter committed fraud against it, Ticor points to Showalter's own statements that even after Title Assurance had received the termination notice, Showalter continued to issue closing protection letters with Ticor as underwriter. [Doc. 70-1 at 27.] In addition,

---

[6] In fact, the portion of Pittman's deposition cited by Ticor actually supports Pittman. Nowhere in this passage does Defendant Pittman say that the house sold for more or less than $81,500. Instead, he says he believed someone else was providing the $34,000 difference between the sale price and what he owed on the mortgage. [Doc. 60-3 at 31-32.]

[7] For similar reasons, the Court rejects Ticor's argument that Pittman created his own loss.

-11-

Case No. 1:09-cv-775
Gwin, J.

Showalter admitted that despite the fact that he knew Ticor only permitted agents to generate CPLs via its website, [Doc. 70-1 at 31], he nevertheless issued new CPLs by "cut[ting] and past[ing] the name, address and file number on the top of an existing closing protection letter" on multiple occasions after Ticor had terminated the agency contract. [Doc. 70-1 at 27.]

Responding to this evidence, Showalter says that he believed he was issuing valid CPLs and did not know about the termination of the issuing agency contract until December 2008. [Doc. 70-1 at 26.]

This Court finds that Plaintiff Ticor has carried its burden to set forth specific facts showing a triable issue on its fraud and fraudulent misrepresentation claims. Specifically, Ticor has produced evidence from which a reasonable juror could infer that Showalter knowingly failed to disclose material information—i.e., that he was continuing to operate under the terminated agency agreement—with the intent to mislead Ticor and third parties into relying on this concealment. Moreover, Ticor has produced evidence that it justifiably relied on the lack of any communications from Showalter and a jury could infer that Ticor and these third parties have been harmed as a result of the multiple CPLs Showalter issued without authority. Defendant Showalter's beliefs about his actions and knowledge of the termination notice are simply questions of fact that this Court does not resolve on a motion for summary judgment.

Accordingly, this Court **DENIES** Defendant Showalter's motion for summary judgmen as to Plaintiff Ticor.

*2. Viola's Fraud Cross-Claim*

Similarly, Defendant Showalter moves for summary judgment on Defendant Viola's cross-claim of fraud against him. Defendant Viola does not respond to the motion. In his cross-claim,

Case No. 1:09-cv-775
Gwin, J.

Defendant Viola alleges that Showalter "did commit various acts of forgery," and "various acts of fraud" that caused Viola to suffer significant economic damages. [Doc. 26 at 6.] In his motion, Showalter says that Viola has failed to provide any evidence to support these allegations. [Doc. 62-1 at 5.]

Although neither Showalter nor Viola attaches any affidavits, depositions, or other exhibits to the motions or briefing, portions of their deposition testimony have been filed by Plaintiff Ticor and Defendant Pittman. On that record, this Court finds that Defendant Viola has produced sufficient evidence from which a reasonable trier of fact could conclude that Showalter defrauded Viola.

Even though the mere failure to disclose a fact is not equivalent to concealment, "nondisclosure by a person who, under the circumstances, has a duty to speak may be commensurate with concealment." *Jenkins v. Clark*, 454 N.E.2d 541, 551 (Ohio Ct. App. 1982). Here, Showalter allegedly failed to inform Viola that Ticor terminated its issuing agency contract with Title Assurance. [Doc. 70-1 at 52.] By virtue of their co-ownership of Title Assurance, Defendant Showalter had a duty to bring this information to Viola's attention. *See Fed. Mgmt. Co. v. Coopers & Lybrand*, 738 N.E.2d 842, 855 (Ohio Ct. App. 2000) ("[A] duty to disclose arises primarily in a situation involving a fiduciary or other similar relationship of trust and confidence.") Moreover, from the evidence provided, the trier of fact could infer that this concealment harmed Viola.

As noted *supra*, Defendant Showalter's beliefs about his actions and knowledge of the termination notice are simply questions of fact that this Court does not resolve on a motion for summary judgment.

Accordingly, the Court **DENIES** Defendant Showalter's motion for summary judgment on

Case No. 1:09-cv-775
Gwin, J.

Defendant Viola's cross-claim of fraud.

### 3. Pittman's Fraud Cross-Claim

Finally, Defendant Showalter moves for summary judgment on Defendant Pittman's cross-claim for fraud. With this cross-claim, Pittman says that Defendant Showalter fraudulently converted or disposed of the funds dedicated to pay off Pittman's mortgage. [Doc. 18 at 7.] Moving for summary judgment, Defendant Showalter says that all of the evidence shows that he attempted to pay the money to the company he believed to be the valid holder of Pittman's mortgage and that he did not know anything was wrong with the transaction. [Doc. 62-1 at 7.]

Defendant Showalter's arguments, however, are merely disputes of material fact, not arguments of law. For example, although Showalter testified that he believed "Investech Mortgage" was the proper payee, he wired the funds to an account in the name of "Riviera Funding" per instructions sent through a yahoo email account. [Doc. 72-2 at 74.] Showalter also prepared several HUD-1 statements, including one that had Cauley's signature and a different payoff number and one with only Pittman's signature, ultimately sending the one with Cauley's signature to her mortgagee Wells Fargo.[8/] [Doc. 72-3 at 43-44, 87.] A jury could infer that Showalter's actions in this regard are better explained by fraud than by mistake.

Accordingly, this Court **DENIES** Defendant Showalter's motion for summary judgment as to Defendant Pittman.

### C. Viola's Motion for Summary Judgment

Defendant Viola moves this Court for summary judgment on Plaintiff Ticor's claim of fraud,

---

[8/] In his reply, Defendant Showalter says that preparing multiple HUD-1s is common in a real estate transaction, that he believed he was preparing an accurate HUD-1, and that the Pittman sale never raised any red flags. [Doc. 79 at 2.] Regardless of the fact that Showalter states in his deposition, "So, yeah, there's a whole bunch of red flags I can go back and take a look at," [Doc. 72-2 at 53, ln. 5-7], these arguments constitute disputes of material fact.

Case No. 1:09-cv-775
Gwin, J.

Defendant Pittman's cross-claim of fraud, and Defendant Showalter's cross claim for loss of income. [Doc. 66.]

### *1. Ticor's Fraud Claim*

In its Complaint, Plaintiff Ticor alleges that Defendant Viola fraudulently continued to issue closing protection letters and other title commitments after Ticor had terminated the issuing agency contract. [Doc. 1 at 10-11.] Moving this Court for summary judgment or to dismiss the Complaint, Defendant Viola says that all of the evidence in this case points to Showalter as the source of any fraudulent conduct.[9/] [Doc. 66 at 3.]

In opposing Viola's motion for summary judgment, Plaintiff Ticor argues that because Defendant Viola knew that Showalter had acted improperly in the past and was concerned about other complaints against Showalter and Title Assurance, the trier of fact could reasonably conclude that Viola was aware of and even involved in the fraud here. [Doc. 73 at 8.] Moreover, Ticor notes that Viola has been indicted in federal court for allegedly participating in a mortgage fraud scheme operating similar to the improprieties surrounding the Pittman sale. [Doc. 73-1 at 84-138.] This fact, says Plaintiff Ticor, further supports an inference of fraud in this case.

Although this Court finds the evidence offered against Viola somewhat scant, it nevertheless denies Viola's motion for summary judgment, largely because Defendant Viola failed to timely comply with Ticor's proper requests that he turn over Title Assurance's escrow files. Under Rule 56(f), a party opposing a motion for summary judgment may show by affidavit that it is unable to present facts essential to justify its opposition. Fed. R. Civ. P. 56(f). Upon receiving such an

---

[9/] Although Defendant Viola cites to portions of his deposition testimony, he has not provided this Court with any of the relevant pages. Accordingly, this Court looks to the evidence provided by Plaintiff Ticor and Defendant Pittman in opposing Viola's motion—evidence which includes excerpts from Viola's deposition.

Case No. 1:09-cv-775
Gwin, J.

affidavit, the court may: (1) deny the motion; (2) order a continuance to enable further discovery; or (3) issue any other just order. *Id.*

Here, by affidavit of its attorney Sara Stahley, Plaintiff Ticor says that despite this Court's October 16, 2009, order compelling Defendant Viola to produce the escrow files, Viola had yet to comply by the date Ticor's opposition was due. [Doc. 73-1 at 141-142.] Further, Ticor says that given Viola's indictment for defrauding mortgage lending companies through fraudulent loan applications, Title Assurance's escrow files might reveal further instances of fraud directed against Ticor. [Doc. 73-1 at 141.]

Accordingly, in exercising its discretion under Rule 56(f), this Court **DENIES** Defendant Viola's motion for summary judgment against Ticor.

*2. Pittman's Fraud Cross-Claim*

Defendant Viola also moves for summary judgment on Defendant Pittman's cross-claim against him. [Doc. 66.] With his cross-claim, Defendant Pittman essentially says that Viola acted together with Showalter in allegedly converting the funds from the sale of Pittman's home. [Doc. 18 at 7-8.]

In this instance, the Court finds that Defendant Pittman has not produced adequate evidence from which a reasonable trier of fact could infer that Viola defrauded him. *See 60 Ivy Street Corp., 822 F.2d at 1435* ("[The non-moving] party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial."). Specifically, all of Defendant Pittman's evidence supports the theory that Defendant Showalter, not Viola, improperly disposed of or converted the funds.

As noted *supra*, Showalter wired the funds to an account in the name of "Riviera Funding"

Case No. 1:09-cv-775
Gwin, J.

per instructions sent through a "yahoo" email account. [Doc. 72-2 at 74.] Showalter prepared the several conflicting HUD-1 statements. [Doc. 72-3 at 43-44, 87.] Although Defendant Pittman may well suspect that Viola played some role in these actions, he does not point to any evidence before this Court suggesting that Viola even knew of or participated in the Pittman sale.[10]

Neither is Viola's subsequent indictment for mortgage fraud are availing to Pittman here because the scheme alleged in the indictment was one to defraud mortgage lending companies by creating fraudulent loan applications. [Doc. 73-1 at 87-92.] Although this indictment lends support to Ticor's claim that Viola defrauded it by issuing invalid policies and holding Ticor out as the underwriter, it would not permit a trier of fact to infer that Viola similarly defrauded Pittman in an isolated transaction by converting the payoff funds. Without any other evidentiary support, such an inference is simply too attenuated to permit the claim to go forward.

Accordingly this Court **GRANTS** Defendant Viola's motion for summary judgment as to Defendant Pittman's cross-claim for fraud.

*3. Showalter's Conversion Cross-Claim*

Finally, citing a lack of evidence, Defendant Viola moves for summary judgment on Defendant Showalter's cross-claim for conversion. [Doc. 66 at 4.] With his cross-claim, Defendant Showalter says that Viola "mismanaged the business affairs of Title Assurance by various acts," and ultimately, "controlled and exercised dominion over money that was the property of Showalter." [Doc. 21 at 6-7.]

Although he has replied in support of his own motion for summary judgment, Defendant

---

[10] In fact, Pittman does not attach any portion of Viola's deposition testimony to his opposition brief. In the attached portion of Showalter's deposition, Showalter mentions Viola only twice—both times discussing the fact that by law Viola had to be a minority stakeholder in Title Assurance. [Doc. 72-3 at 26.]

-17-

Case No. 1:09-cv-775
Gwin, J.

Showalter has not responded in opposition to Defendant Viola's motion. In addition, a review of the record before this Court reveals no testimony or other evidence that Viola converted any monies belonging to Showalter.

Accordingly, this Court **GRANTS** Defendant Viola's motion for summary judgment as to Defendant Showalter's cross-claim for conversion.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the summary judgment motions.

IT IS SO ORDERED.


Dated: December 17, 2009          *s/    James S. Gwin*
                                  JAMES S. GWIN
                                  UNITED STATES DISTRICT JUDGE